GIBSON, DUNN & CRUTCHER
Debra Wong Yang (SBN 123289)
James P. Fogelman (SBN 161584)
Timothy W. Loose (SBN 241037)
333 South Grand Avenue
Los Angeles, California 90071-3197
Telephone: + 1.213.229.7000
Facsimile: + 1.213.229.7520
Email:   jfogelman@gibsondunn.com
         dwongyang@gibsondunn.com
         tloose@gibsondunn.com

Attorneys for Defendant
UNIVERSITY OF SOUTHERN CALIFORNIA

*[Additional counsel identified below.]*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| ALYSSA TAMBOURA, *et al.*,<br>　　　　　Plaintiffs,<br><br>　　vs.<br><br>WILLIAM "RICK" SINGER, *et al.*,<br>　　　　　Defendants. | CASE NO. 5:19-cv-03411-EJD<br>Re: ECF No. 69 |
| TYLER BENDIS, *et al.*,<br>　　　　　Plaintiffs,<br><br>　　vs.<br><br>WILLIAM "RICK" SINGER, *et al.*,<br>Defendants. | CASE NO. 5:19-cv-01405-EJD<br>Re: ECF No. 34<br><br>**UNIVERSITY DEFENDANTS' SUPPLEMENTAL BRIEF IN SUPPORT OF THEIR MOTION TO DISMISS**<br><br>Hearing Date: March 26, 2020<br>Time: 9:00 a.m.<br>Courtroom: 4<br>Before the Hon. Edward J. Davila |

Gibson, Dunn & Crutcher LLP

University Defendants' Supplemental Brief in Support of Their Motion to Dismiss
Case Nos. 5:19-cv-03411-EJD; 5:19-cv-01405-EJD

# TABLE OF CONTENTS

Page

I. INTRODUCTION ........................................................................................................... 1

II. ARGUMENT .................................................................................................................. 2

    A. LEGAL STANDARD ........................................................................................ 2

    B. ARGUMENT ..................................................................................................... 3

        1. Plaintiffs Allege No Concrete, Particularized Injury ................................. 3

        2. There Is No Causal Connection Between the University Defendants and Plaintiffs' Alleged Injuries ................................................................... 6

        3. Plaintiffs Allege No Future Harm That an Injunction Would Redress .......................................................................................................... 9

III. CONCLUSION ............................................................................................................. 11

i

University Defendants' Supplemental Brief in Support of Their Motion to Dismiss
Case Nos. 5:19-cv-03411-EJD; 5:19-cv-01405-EJD

Gibson, Dunn & Crutcher LLP

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Already, LLC v. Nike, Inc.*,
  568 U.S. 85 (2013) ...........................................................................................................................11

*In re Apple Processor Litig.*,
  366 F. Supp. 3d 1103 (N.D. Cal. 2019) ........................................................................2, 5, 6, 8

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) .............................................................................................................8

*Birdsong v. Apple, Inc.*,
  590 F.3d 955 (9th Cir. 2009) .......................................................................................2, 4, 6, 7

*Cahen v. Toyota Motor Corp.*,
  717 F. App'x 720 (9th Cir. 2017) .........................................................................................5

*Cantrell v. City of Long Beach*,
  241 F.3d 674 (9th Cir. 2001) .................................................................................................2

*Carrico v. City & Cty. of San Francisco*,
  656 F.3d 1002 (9th Cir. 2011) ...............................................................................................6

*City of Los Angeles v. Lyons*,
  461 U.S. 95 (1983) .....................................................................................................3, 10, 11

*DaimlerChrysler Corp. v. Cuno*,
  547 U.S. 332 (2006) .............................................................................................................9

*Davidson v. Kimberly-Clark Corp.*,
  889 F.3d 956 (9th Cir. 2018) ...............................................................................................11

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*,
  528 U.S. 167 (2000) .............................................................................................................2

*Gutierrez v. Wells Fargo Bank, NA*,
  704 F.3d 712 (9th Cir. 2012) .................................................................................................7

*Hodgers-Durgin v. de la Vina*,
  199 F.3d 1037 (9th Cir. 1999) .............................................................................................10

*Imagineering, Inc. v. Kiewitt Pacific Co.*,
  976 F.2d 1303 (9th Cir. 1992) .............................................................................................10

*In re iPhone Application Litig.*,
  6 F. Supp. 3d 1004 (N.D. Cal. 2013) .................................................................................7, 8

ii
University Defendants' Supplemental Brief in Support of Their Motion to Dismiss
Case Nos. 5:19-cv-03411-EJD; 5:19-cv-01405-EJD

Gibson, Dunn & Crutcher LLP

*Johnson v. Weinberger*,
  851 F.2d 233 (9th Cir. 1988) ............................................................................................. 2, 8

*Lanovaz v. Twinings N. Am., Inc.*,
  726 F. App'x 590 (9th Cir. 2018) ........................................................................................ 11

*Letizia v. Facebook Inc.*,
  267 F. Supp. 3d 1235 (N.D. Cal. 2017) ............................................................................... 10

*In re LinkedIn User Privacy Litig.*,
  932 F. Supp. 2d 1089 (N.D. Cal. 2013) ............................................................................. 2, 9

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992) ................................................................................................. 2, 3, 6, 9

*Nelsen v. King Cty.*,
  895 F.2d 1248 (9th Cir. 1990) .............................................................................................. 11

*Perez v. Nidek Co., Ltd.*,
  711 F.3d 1109 (9th Cir. 2013) ............................................................................................... 4

*Perkins v. LinkedIn Corp.*,
  53 F. Supp. 3d 1190 (N.D. Cal. 2014) ................................................................................... 7

*Richter v. CC-Palo Alto, Inc.*,
  176 F. Supp. 3d 877 (N.D. Cal. 2016) ................................................................................... 6

*Sanders v. Apple Inc.*,
  672 F. Supp. 2d 978 (N.D. Cal. 2009) ................................................................................... 8

*Simon v. Eastern Kentucky Welfare Rights Organ.*,
  426 U.S. 26 (1976) ................................................................................................................. 2

*Spokeo, Inc. v. Robins*,
  136 S. Ct. 1540, *as revised* (May 24, 2016) ............................................................... 2, 3, 10

*In re Tobacco II Cases*,
  46 Cal. 4th 298 (2009) ........................................................................................................... 7

*Warren v. Fox Family Worldwide, Inc.*,
  328 F.3d 1136 (9th Cir. 2003) ............................................................................................... 8

Gibson, Dunn & Crutcher LLP

iii

University Defendants' Supplemental Brief in Support of Their Motion to Dismiss
Case Nos. 5:19-cv-03411-EJD; 5:19-cv-01405-EJD

Pursuant to the Court's Order of February 11, 2020, the University Defendants—Georgetown University, the Regents of the University of California (the "UC Regents"), The Board of Trustees of the Leland Stanford Junior University ("Stanford"), the University of Southern California ("USC"), Wake Forest University, and Yale University (collectively, the "University Defendants")—submit this supplemental brief regarding Plaintiffs' failure to adequately plead Article III standing.

## I.     INTRODUCTION

Plaintiffs allege nothing to establish a concrete, particularized injury that can be traced to anything that the University Defendants supposedly did (or failed to do).  Plaintiffs do not allege that the University Defendants made any misrepresentations to them during the application process.  And they offer no explanation of what, if anything, Plaintiffs would have done *differently* had they known that the University Defendants were targeted by a criminal scheme designed to obtain admission for a small number of applicants.

Plaintiffs notably do not claim that *their* admissions applications were not considered in the ordinary course.  Nor do any Plaintiffs allege that *they* would have been admitted to these highly selective universities but for some particular act of any of the University Defendants.  Plaintiffs allege nothing beyond the fact that they were among hundreds of thousands of hopeful applicants who were not admitted to extremely competitive colleges.  FAC ¶ 52.[1]  While those circumstances may be disappointing, they do not constitute an injury in fact that can sustain a federal lawsuit (much less a nationwide class action seeking return of all application fees paid over an eight-year period).

Plaintiffs' attempts to manufacture standing from this scenario are unavailing.  The driving theory of the complaint is that Plaintiffs were subjected to an "unfair" admissions process because an exceedingly small number of other applicants may have criminally conspired to secure admission by allegedly misrepresenting their athletic prowess.  But Plaintiffs cannot deny that the universities were *targeted* by (not participants in) this criminal conspiracy, and Plaintiffs do not allege that their particular applications were impacted by the conspiracy in any event.  No Plaintiff alleges that they

---

[1] Citations to "FAC" refer to the First Amended Complaint in the *Tamboura* matter unless specifically noted.  The *Bendis* complaint suffers from the same flaws.

would not have applied for admissions (and paid a fee) had they known about the alleged scheme. Nor could Plaintiffs plausibly do so: The conspiracy allegedly affected only athletic admissions, and no Plaintiff sought admission as an athlete. No Plaintiff alleges that the standard admissions processes were altered as a result of the conspiracy, or that any particular Plaintiff would have been admitted had the University Defendants discovered sooner that a small number of applicants may have misrepresented their athletic ability. Plaintiffs allege no facts to suggest that their application decisions were altered due to some allegedly wrongful act, much less any act of the University Defendants. Plaintiffs cannot plead any sort of cognizable injury from the admissions process, and their claims against the University Defendants should be dismissed for lack of standing.

## II.     ARGUMENT

### A.     LEGAL STANDARD

"An Article III federal court must ask whether a plaintiff has suffered sufficient injury to satisfy the 'case or controversy' requirement of Article III of the U.S. Constitution. To satisfy Article III standing, [a] plaintiff must allege: (1) an injury in fact that is concrete and particularized, as well as actual and imminent; (2) that the injury is fairly traceable to the challenged action of the defendant; and (3) that it is likely (not merely speculative) that injury will be redressed by a favorable decision." *In re LinkedIn User Privacy Litig.*, 932 F. Supp. 2d 1089, 1092 (N.D. Cal. 2013) (Davila, J.) (citing *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000) and *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561–62 (1992)). "[A] party asserting state law claims in federal court 'must meet the stricter federal standing requirements of Article III.'" *Birdsong v. Apple, Inc.*, 590 F.3d 955, 960 n.4 (9th Cir. 2009) (quoting *Cantrell v. City of Long Beach*, 241 F.3d 674, 683 (9th Cir. 2001)).

"At the pleading stage, the plaintiff must clearly allege facts demonstrating each element." *In re Apple Processor Litig.*, 366 F. Supp. 3d 1103, 1107 (N.D. Cal. 2019) (Davila, J.) (citing *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547, *as revised* (May 24, 2016)). "When '[s]peculative inferences' are necessary … to establish either injury or the connection between the alleged injury and the act challenged, standing will not be found." *Johnson v. Weinberger*, 851 F.2d 233, 235 (9th Cir. 1988) (quoting *Simon v. Eastern Kentucky Welfare Rights Organ.*, 426 U.S. 26, 45 (1976)).

Gibson, Dunn & Crutcher LLP

2

University Defendants' Supplemental Brief in Support of Their Motion to Dismiss
Case Nos. 5:19-cv-03411-EJD; 5:19-cv-01405-EJD

"To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo*, 136 S. Ct. at 1548 (quoting *Lujan*, 504 U.S. at 560). To establish an injury that is traceable to the defendant's conduct, "there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court." *Lujan*, 504 U.S. at 560 (punctuation and citations omitted). Finally, "it must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'" *Id.* at 561 (citations omitted).

Further, when seeking injunctive or declaratory relief, plaintiffs must demonstrate "a sufficient likelihood that [they] will again be wronged in a similar way." *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983).

**B.   ARGUMENT**

    **1.   Plaintiffs Allege No Concrete, Particularized Injury**

Plaintiffs' argument is that "they were damaged because they paid admission fees to the Defendants to participate in a fair, merit-based application process, which they did not receive." Opp. at 12–13. Plaintiffs contend that the application process they participated in was "unfair" because an infinitesimal fraction of the overall applicant pool allegedly conspired to obtain admission as prospective student-athletes, even though those applicants allegedly did not have the ability to be competitive in those sports. FAC ¶ 494 ("[T]he Class Members were damaged, in that they paid admission application fees . . . but did not receive a fair application process that a reasonable person would expect."); *id.* ¶ 505 (same).

But Plaintiffs concede that the admissions process used for their particular applications **was fair**—as Plaintiffs put it: "**Defendants' statements about merit-based criteria" were "literally true**." Opp. at 7. Plaintiffs admit that their applications were "reviewed based on their academic performance and personal qualities," *id.* at 2, and that "Defendants considered high school grades" and other relevant factors when Plaintiffs' particular applications were being considered, *id.* at 7. These concessions eviscerate Plaintiffs' suggestion that their applications did not receive the

3

University Defendants' Supplemental Brief in Support of Their Motion to Dismiss
Case Nos. 5:19-cv-03411-EJD; 5:19-cv-01405-EJD

Gibson, Dunn &
Crutcher LLP

consideration they paid for. Moreover, there are no factual allegations suggesting that any particular Plaintiff's application was not considered on the merits, and no Plaintiff alleges that he or she would have received admission to one of the universities but for some particular act (or omission) of any of the University Defendants. *See id.* at 12 (conceding that "nowhere in the Amended Complaint have Plaintiffs alleged that their injury is being denied admission."). Plaintiffs therefore cannot allege facts establishing any harm, much less one that is "concrete and particularized as to themselves." *Birdsong*, 590 F.3d at 960 (dismissing for lack of standing because plaintiffs did not plead any facts that would link their particular experiences to the problems alleged in the complaint, which concerned hearing loss caused by digital music players).

Although the complaint devotes many paragraphs to discussing the criminal conspiracy that, among other things, targeted the University Defendants' processes for admitting student-athletes (*see, e.g.* FAC ¶¶ 47–60), it alleges no facts showing that the scheme impacted these Plaintiffs' particular applications for admission in any way. This is no surprise. According to Plaintiffs, the Singer scheme affected only "athletic admissions slots." *Id.* ¶ 2. Plaintiffs were not even eligible to apply for these alleged "slots" because they were not prospective student-athletes. *See* Opp. at 7 n.10; *cf. Perez v. Nidek Co., Ltd.*, 711 F.3d 1109, 1113 (9th Cir. 2013) (holding that Article III standing requirements preclude the bringing of a class claim against physicians who did not perform LASIK eye surgery on the class representatives, even though they may have performed it upon other putative class members).[2] Tellingly, no Plaintiff alleges that they would have refused to apply to the University Defendants had they known that a very small number of applicants may have been improperly seeking admission as athletes and, thus, would not have paid application fees to the University Defendants. *See, e.g.*, FAC ¶¶ 457, 475, 484–486, 513, 533. Moreover, it is not clear that

---

[2] UCLA had a total of one student who in 2016 allegedly gained admission through Mr. Singer's "side door" as a member of the women's soccer team. As the FAC alleges, *see* FAC ¶¶ 57–60, student-athlete admissions are handled separately from non-student athlete admissions, and therefore, non-student-athlete applicants, such as Plaintiffs here, could not have lost a place at the University as a result of the scheme.

Gibson, Dunn & Crutcher LLP

4

University Defendants' Supplemental Brief in Support of Their Motion to Dismiss
Case Nos. 5:19-cv-03411-EJD; 5:19-cv-01405-EJD

every Plaintiff even applied during the specific time in which the University Defendants were being targeted by the Singer scheme.[3]  Indeed, in some cases, Plaintiffs fail even to specify which year they submitted their applications or whether the university was being targeted at the time.  *See, e.g., Bendis*, FAC ¶¶ 409-411.  Plaintiffs cannot sweep these shortcomings aside with a conclusory assertion that they nevertheless would have found it "important to know" about the Singer scheme before they applied.  That is not an allegation of fact, and it cannot establish harm when Plaintiffs concede that the alleged scheme was immaterial to their specific application process.

Plaintiffs cannot clear the standing hurdle by simply alleging that they are out-of-pocket for the application fees, either.  To begin, several applicants did not even pay these fees, and relied upon their parents to do so.  Regardless of who paid fees, there was never any expectation that paying the fees would result in admission, and there is no allegation that the standard admissions protocols were not followed as to any of Plaintiffs' applications.  To the contrary, as noted above, Plaintiffs concede that their applications received the very merits-based consideration to which Plaintiffs claim they were entitled.  Accordingly, Plaintiffs are no different than those who lacked standing before this Court in the *In re Apple Processor Litigation.*  366 F. Supp. 3d at 1109 (citing *Cahen v. Toyota Motor Corp.*, 717 F. App'x 720, 723 (9th Cir. 2017)).  In *Apple Processor*, plaintiffs claimed that software patches allegedly degraded the value of certain electronic devices.  *Id.* at 1106.  This Court held that plaintiffs failed to allege injury because they did not allege facts showing that the issue ever impacted the plaintiffs; specifically, plaintiffs did "not allege facts to show their [devices were] worth less than what they paid for them."  *Id.* at 1110.  Plaintiffs' "conclusory allegations that they would not have purchased their [devices], or paid the prices they did" were no substitute for alleging facts showing that the plaintiffs' particular devices were less usable or less valuable as a result of the

---

[3] For example, it is alleged that one or two applicants were admitted under false pretenses by Georgetown during the 2008-2009, 2012-2013, and 2015-2016 cycles, *see* FAC ¶¶ 327-345, but the Georgetown plaintiffs did not apply during those cycles, *see* FAC ¶¶ 421 (Hall-Poirier applied during 2013-2014 or 2014-2015 cycle), 436 (Keyhan applied during 2016-2017 or 2017-2018 cycle).

5
University Defendants' Supplemental Brief in Support of Their Motion to Dismiss
Case Nos. 5:19-cv-03411-EJD; 5:19-cv-01405-EJD

Gibson, Dunn & Crutcher LLP

complained-of conduct. *Id.* at 1110 (punctuation omitted); *see also Birdsong*, 590 F.3d at 961 (plaintiffs' benefit-of-the-bargain theory of injury failed because they did not allege "that they were deprived of an agreed-upon benefit").

Here, Plaintiffs fail to allege any facts showing that their specific applications were impacted by the allegedly "unfair" process. Indeed, unlike *Birdsong*, Plaintiffs here have not even alleged in conclusory fashion that they "overpaid" for their applications or would not have submitted them at all. Nor could Plaintiffs truthfully amend their complaint to assert any such impact. They have already conceded, in papers filed with this Court, that their particular applications were given due consideration on the merits, and the criminal scheme that allegedly made the admissions process "unfair" had no impact on any Plaintiff's application process or admission decision. The complaint should therefore be dismissed for lack of standing, and without leave to amend. *Richter v. CC-Palo Alto, Inc.*, 176 F. Supp. 3d 877, 903 (N.D. Cal. 2016) (Davila, J.) (dismissing claims for lack of standing without leave to amend where amendment would be futile); *Carrico v. City & Cty. of San Francisco*, 656 F.3d 1002, 1008 (9th Cir. 2011) (affirming dismissal for lack of standing and denial of leave to amend where amendment would be futile).

### 2. There Is No Causal Connection Between the University Defendants and Plaintiffs' Alleged Injuries

Plaintiffs lack standing for the additional and independent reason that they fail to allege that any action by a University Defendant caused them any harm. As discussed above, the University Defendants were the *targets* of the Singer scheme, which Plaintiffs allege was generally designed to subvert the University Defendants' admissions processes using falsified documents allowing "unqualified students [to] slip[ ] in through the back door of the admissions process." FAC ¶ 5. Accordingly, Plaintiffs' supposed injuries are at most traceable to actions taken by Singer and his entities—third-party actions that are not sufficient to establish standing against the University Defendants. *Lujan*, 504 U.S. at 560 (requiring the injury "to be fairly traceable to the challenged action of the defendant, *and not the result of the independent action of some third party*") (punctuation omitted, emphasis added).

The essence of Plaintiffs' allegations regarding the University Defendants' conduct is that the

Gibson, Dunn & Crutcher LLP

6

University Defendants' Supplemental Brief in Support of Their Motion to Dismiss
Case Nos. 5:19-cv-03411-EJD; 5:19-cv-01405-EJD

universities supposedly misrepresented their admissions policies as being fair and merit-based. FAC ¶ 475 ("the misrepresentation of the admissions process as merit-based" as basis for CLRA claim); FAC ¶ 485 ("representations by the University Defendants on their respective websites as to the integrity of the admissions process" as basis for UCL claim); FAC ¶ 513 ("representation by the University Defendants of their admissions process" as basis for negligent misrepresentation claims); FAC ¶ 533 ("representations by the University Defendants on their respective websites" as basis for claims under other states' consumer protection laws).

Plaintiffs' attempts to trace any harm to the University Defendants from these statements fail for two primary reasons—(1) Plaintiffs do not allege that they read and relied on the statements they now claim are misleading, and (2) Plaintiffs do not allege any facts showing that the standard admissions policies were not followed with respect to Plaintiffs' particular applications.

*First,* "Plaintiffs must establish actual reliance on [the University Defendants'] alleged misrepresentations to demonstrate causation for purposes of Article III standing."[4] *In re iPhone Application Litig.*, 6 F. Supp. 3d 1004, 1015 (N.D. Cal. 2013); *cf. Gutierrez v. Wells Fargo Bank, NA*, 704 F.3d 712, 728 (9th Cir. 2012) ("To establish standing to seek class-wide relief for fraud-based Unfair Competition Law claims, the named plaintiffs must prove 'actual reliance' on the misleading statements.") (citing *In re Tobacco II Cases*, 46 Cal. 4th 298, 306 (2009) (holding that statutory standing for UCL claims requires actual reliance)). For the Plaintiffs' harm to be "fairly traceable" to the University Defendants' alleged misrepresentations about their admissions processes, Plaintiffs "must have seen the misrepresentations and taken some action based on what they saw." *In re iPhone Application Litig.*, 6 F. Supp. 3d at 1015; *cf. In re Tobacco II Cases*, 46 Cal. 4th 298, 326 (2009) ("[R]eliance is proved by showing that the defendant's misrepresentation or nondisclosure was 'an immediate cause' of the plaintiff's injury-producing conduct."); *cf. Perkins v. LinkedIn Corp.*, 53 F. Supp. 3d 1190, 1220 (N.D. Cal. 2014) (dismissing misrepresentation claim because

---

[4] Insofar as the analysis overlaps for determining statutory standing and Article III standing, dismissal for lack of injury for one inquiry may be grounds for dismissal for the other. *Birdsong*, 590 F.3d at 960 n.4.

7

University Defendants' Supplemental Brief in Support of Their Motion to Dismiss
Case Nos. 5:19-cv-03411-EJD; 5:19-cv-01405-EJD

Gibson, Dunn & Crutcher LLP

courts in this District have "consistently held that plaintiffs in misrepresentation cases must allege that they actually read the challenged representations").

Here, no Plaintiff alleges that they read any specific statement that they now claim is a misrepresentation, much less pleads facts demonstrating how those statements induced them to act in a way that they would not otherwise have acted. Plaintiffs do not allege that they were induced to apply to these specific universities because they saw and relied upon generic statements that applications are considered based on "grades, standardized test scores," "high school transcript[s]," "high school curriculum," "writing skills," "extracurricular activities, and evidence of character and talent." FAC ¶ 469. Plaintiffs' conclusory assertions that these statements—which none of the Plaintiffs alleges ever seeing—were "material" and "substantial factors" in their decisions to apply to the universities are legal conclusions that do not suffice to establish standing. *Cf. Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (courts "are not bound to accept as true a legal conclusion couched as a factual allegation"); *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003) (in determining standing, courts do not assume "the truth of legal conclusions merely because they are cast in the form of factual allegations"). These conclusory allegations ring particularly hollow in light of Plaintiffs' failure to allege that they would not have applied to the University Defendants had they known that Singer's scheme had targeted coaches at these universities. Furthermore, some of the Plaintiffs did not even apply to any of these universities – their children did. FAC ¶¶ 422–423, 426, 428, 433, 437, 441, 443, 445. These parent Plaintiffs could not have relied on or been injured by alleged misrepresentations regarding an admissions process that they did not participate in.

Plaintiffs argue that they did not need to see the statements because reliance may be alleged by implication. Opp. at 12:17–22. The law requires more. *See In re iPhone Application Litig.*, 6 F. Supp. 3d at 1015 (holding that standing requires plaintiffs to "establish actual reliance"). At the bare minimum, Plaintiffs still need to have alleged the specifics of who read what statement and how the statement caused each of them to take a particular action. *See In re Apple Processor Litig.*, 366 F. Supp. 3d at 1107 (holding that plaintiffs "must clearly allege facts demonstrating each element" of Article III standing). The FAC provides none of this detail, and the Opposition's plea for the Court to draw inferences to assume standing does not suffice. *See Weinberger*, 851 F.2d at 235; *Sanders v.*

8

University Defendants' Supplemental Brief in Support of Their Motion to Dismiss
Case Nos. 5:19-cv-03411-EJD; 5:19-cv-01405-EJD

Gibson, Dunn & Crutcher LLP

*Apple Inc.*, 672 F. Supp. 2d 978, 984 (N.D. Cal. 2009) ("A plaintiff does not satisfy the standing requirement when speculative inferences are necessary to establish either injury or the connection between the alleged injury and the act challenged.") (punctuation and citations omitted). Because "Plaintiffs do not even allege that they actually read the alleged misrepresentation," and "[b]ecause a causal connection between a defendant's actions and plaintiff's alleged harm is required for standing, Plaintiffs have not established standing based on an alleged misrepresentation." *In re LinkedIn User Privacy Litig.*, 932 F. Supp. 2d at 1093.

*Second*, Plaintiffs do not even allege that the review of their applications occurred other than as described. Plaintiffs claim that University Defendants could have taken action to prevent the Singer scheme by "having additional layers of review of athletic applicants," such as "checking athletic credentials and photographs." FAC ¶ 491 (negligence claim). This again fails for the fundamental reason that Plaintiffs would not have been impacted by such changes. Plaintiffs concede that the Singer scheme concerned only the admission of prospective student-athletes, and even label it the "Student Athlete Recruitment scam." FAC ¶¶ 2, 498–99 (respondeat superior claim); 502 (negligent supervision claim). The student Plaintiffs do not explain how they—who were not applying as student-athletes— could have been injured by the universities' alleged failure to subject certain *other applicants* (prospective student-athletes) to "additional layers of review." FAC ¶ 491. As for the parent Plaintiffs, who did not apply for admission to any of the University Defendants and were not considered for admission at all, changes to admissions policies would have had no impact on them. And although some parent Plaintiffs allege that they paid their child's application fee, again a change in admissions procedures applicable to prospective student-athletes would have no effect on the evaluation of the student Plaintiffs' applications. Without such a connection, Plaintiffs fail to allege standing because "the challenged action" of the University Defendants lacks any causal connection to a harm Plaintiffs claim to have suffered. *Lujan*, 504 U.S. at 560 (1992).

### 3. Plaintiffs Allege No Future Harm That an Injunction Would Redress

In addition to these pleading failures, Plaintiffs also lack standing to seek injunctive relief because they fail to allege future harm. "[A] plaintiff must demonstrate standing separately for each form of relief sought." *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006). "To have Article

9

University Defendants' Supplemental Brief in Support of Their Motion to Dismiss
Case Nos. 5:19-cv-03411-EJD; 5:19-cv-01405-EJD

Gibson, Dunn &
Crutcher LLP

III standing to seek injunctive relief in a federal court, a plaintiff must demonstrate 'a sufficient likelihood that he will again be wronged in a similar way.'" *Letizia v. Facebook Inc.*, 267 F. Supp. 3d 1235, 1247–48 (N.D. Cal. 2017) (quoting *Lyons*, 461 U.S. at 111); *see also Imagineering, Inc. v. Kiewitt Pacific Co.*, 976 F.2d 1303, 1308 (9th Cir. 1992) (To have standing to seek injunctive relief, "the plaintiff must show 'a very significant possibility of future harm.'"). This threat of injury must be "real and immediate." *Lyons*, 461 U.S. at 102.

Plaintiffs seek an injunction "to stop the University Defendants, The Key and KWF['s] wrongful acts and to require the University Defendants to maintain adequate college admission processes to ensure that the process is based on merit and not tainted by bribes or any other illegal act." FAC ¶ 542; *see also* Prayer for Relief b. But Plaintiffs have not alleged and cannot allege any future harm to *themselves* that such an injunction would prevent.

First, Plaintiffs' sole alleged injury is the application fee they claim was paid when they applied for admission to one of the University Defendants. FAC ¶ 457. Even assuming that there were a cognizable injury (there is not, for the reasons discussed above), no Plaintiff has alleged that they plan to apply to college again, much less to one of the University Defendants. Indeed, Plaintiffs allege that they each are either currently enrolled in or have already graduated from a four-year college, FAC ¶¶ 7–31, 424. There is, therefore, no basis for an injunction.[5]

In *Los Angeles v. Lyons*, 461 U.S. 95 (1983), one of the Supreme Court's bedrock Article III standing precedents, the plaintiff sought injunctive relief to bar the Los Angeles Police Department from using "chokeholds." *Id.* at 98. The Supreme Court held that Lyons lacked standing to seek an

---

[5] The FAC's class allegations do not alter this analysis. "Unless the named plaintiffs are themselves entitled to seek injunctive relief, they may not represent a class seeking that relief." *Hodgers-Durgin v. de la Vina*, 199 F.3d 1037, 1045 (9th Cir. 1999); *see also Spokeo*, 136 S.Ct. at 1547 n.6 ("That a suit may be a class action . . . adds nothing to the question of standing, for even named plaintiffs who represent a class must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong.") (punctuation and citations omitted).

Gibson, Dunn & Crutcher LLP

10

University Defendants' Supplemental Brief in Support of Their Motion to Dismiss
Case Nos. 5:19-cv-03411-EJD; 5:19-cv-01405-EJD

injunction because, although he had been subjected to chokeholds in the past, he could not show "sufficient likelihood that he w[ould] be wronged again in a similar way." *Id.* at 111; *see also Lanovaz v. Twinings N. Am., Inc.*, 726 F. App'x 590 (9th Cir. 2018) (consumer lacked standing to sue where she did not intend to purchase products manufactured by defendant in the future). Here too, Plaintiffs have not pled, and could not plausibly plead, any facts showing any likelihood that they will ever again apply for admission to any university, let alone one of the University Defendants, or that they will again have to pay an application fee.[6]

Second, for all intents and purposes, the Singer scheme has ceased. William "Rick" Singer pleaded guilty on March 12, 2019, as did a number of individuals involved in the Singer conspiracy, all of whom now face criminal proceedings. *See* RJN Ex. D. Thus, any allegation that the conduct alleged in the FAC continues to pose a risk of future harm is purely speculative. Courts "have repeatedly found a lack of standing where the litigant's claim relies upon a chain of speculative contingencies." *Nelsen v. King Cty.*, 895 F.2d 1248, 1252 (9th Cir. 1990).

### III.   CONCLUSION

Plaintiffs submitted applications for admission to the University Defendants, which are highly selective universities. Their applications were considered in good faith in a process Plaintiffs do not

---

[6] *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 968 (9th Cir. 2018), also supports dismissal. In that case, the Ninth Circuit affirmed: (1) that the plaintiff bears the burden of demonstrating standing "separately for each form of relief requested," *id.* at 967; (2) that "allegations of *possible* future injury are not sufficient;" *id.* (emphasis in original); and (3) that where, as here, "standing is premised entirely on the threat of future injury, a plaintiff must show a sufficient likelihood that he will again be wronged in a similar way." *id.* (punctuation and citations omitted). As bears repeating, Plaintiffs cannot meet this burden because they have not alleged, and could reasonably not allege, that they plan to apply to college again. *Cf. e.g,, Already, LLC v. Nike, Inc.*, 568 U.S. 85, 98 (2013) (rejecting argument that standing to pursue declaratory relief can be premised merely on the basis that the plaintiff was "once bitten," and is now "twice shy.") (citing *Lyons*, 461 U.S. at 109)).

Gibson, Dunn & Crutcher LLP

allege was affected by the Singer scheme, and Plaintiffs were denied admission for reasons unrelated to the alleged Singer conspiracy.  Plaintiffs' allegations are a thin veil for the opportunistic nature of this lawsuit, in which Plaintiffs seek to profit from conduct that had no impact on them.  This lawsuit should be dismissed because the First Amended Complaint fails to state a claim on which relief can be granted, but in the alternative, Plaintiffs have no standing to bring this lawsuit, and it should be dismissed for that reason without leave to amend.

DATED:  February 25, 2020               GIBSON, DUNN & CRUTCHER LLP


By:  */s/      James P. Fogelman*
JAMES P. FOGELMAN (SBN 161584)
jfogelman@gibsondunn.com
DEBRA W. YANG (SBN 123289)
dwongyang@gibsondunn.com
TIMOTHY W. LOOSE (SBN 241037)
tloose@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071-3197
Telephone: (213) 229-7520

Attorneys for Defendant
THE UNIVERSITY OF SOUTHERN CALIFORNIA

__*/s/ Michael Mugmon*___
MICHAEL MUGMON (State Bar No. 251958)
michael.mugmon@wilmerhale.com
WILMER CUTLER PICKERING HALE AND DORR LLP
1 Front Street, Suite 3500
San Francisco, CA 94111
Telephone:  (628) 235-1006

BRUCE M. BERMAN (*pro hac vice*)
bruce.berman@wilmerhale.com
MOLLY M. JENNINGS (*pro hac vice*)
molly.jennings@wilmerhale.com
WILMER CUTLER PICKERING HALE AND DORR LLP
1875 Pennsylvania Avenue, NW
Washington, DC 20006
Telephone:  (202) 663-6000

Attorneys for Defendant
GEORGETOWN UNIVERSITY

By:     */s/ William. L. Stern*

William L. Stern (Bar No. 96105)
COVINGTON & BURLING LLP
Salesforce Tower
415 Mission St., 54th Floor
San Francisco, CA 94105-2533
Telephone: + 1 (415) 591-6000
Facsimile: + 1 (415) 591-6091
Email:  wstern@cov.com

Attorney for Defendant
THE REGENTS OF THE UNIVERSITY OF CALIFORNIA

     */s/ Jacob R. Sorensen*

SARAH G. FLANAGAN (SBN 70845)
sarah.flanagan@pillsburylaw.com
JOHN M. GRENFELL (SBN 88500)
john.grenfell@pillsburylaw.com
JACOB R. SORENSEN (SBN 209134)
jake.sorensen@pillsburylaw.com
PILLSBURY WINTHROP SHAW PITTMAN LLP
Four Embarcadero Center, 22nd Floor
San Francisco, California 94111
Telephone:  (415) 983-1000

Attorneys for Defendant THE BOARD OF TRUSTEES OF THE LELAND STANFORD JUNIOR UNIVERSITY

   */s/ Mark J. Seifert*
MARK J. SEIFERT (State Bar No. 217054)
mseifert@seifertfirm.com
SEIFERT LAW FIRM
50 California Street, Ste. 1500
San Francisco, CA 94111
Telephone:     (415) 869-8837
Facsimile:     (415) 901-1123

ADAM K. DOERR (admitted *pro hac vice*)
adoerr@robinsonbradshaw.com
AMANDA PICKENS NITTO (admitted *pro hac vice*)
anitto@robinsonbradshaw.com
TRAVIS S. HINMAN (admitted *pro hac vice*)
thinman@robinsonbradshaw.com
ROBINSON, BRADSHAW & HINSON, P.A.
101 N. Tryon Street, Ste. 1900
Charlotte, NC 28246
Telephone:     (704) 377-2536
Facsimile:     (704) 378-4000

13
University Defendants' Supplemental Brief in Support of Their Motion to Dismiss
Case Nos. 5:19-cv-03411-EJD; 5:19-cv-01405-EJD

Gibson, Dunn & Crutcher LLP

Attorneys for Defendant
WAKE FOREST UNIVERSITY

__/s/ Michael J. Shepard___ _____
MICHAEL J. SHEPARD (State Bar No. 91281)
mshepard@kslaw.com
KING & SPALDING LLP
101 Second Street Ste. 2300
San Francisco, CA 94105
Telephone:    +1 415 318 1200
Facsimile:     +1 415 318 1300

MEGHAN MAGRUDER (admitted *pro hac vice*)
mmagruder@kslaw.com
STEPHEN B. DEVEREAUX (admitted *pro hac vice*)
sdevereaux@kslaw.com
KING & SPALDING LLP
1180 Peachtree Street N.E.
Atlanta, GA 30309
Telephone:    +1 404 572 4600
Facsimile:     +1 404 572 5100

Attorneys for Defendant
YALE UNIVERSITY

Gibson, Dunn & Crutcher LLP

14
University Defendants' Supplemental Brief in Support of Their Motion to Dismiss
Case Nos. 5:19-cv-03411-EJD; 5:19-cv-01405-EJD

ATTORNEY ATTESTATION

I, James P. Fogelman, am the ECF User whose ID and password are being used to file the UNIVERSITY DEFENDANTS' SUPPLEMENTAL BRIEF IN SUPPORT OF THEIR MOTION TO DISMISS. In compliance with N.D. Cal. L.R. 5-1(i)(3), I hereby attest that the concurrence in the filing of the document has been obtained from each of the other signatories.

By: */s/ James P. Fogelman*

James P. Fogelman