UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| ALYSSA TAMBOURA, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>WILLIAM RICK SINGER, et al.,<br><br>Defendants. | Case No. 5:19-cv-03411-EJD<br><br>Re: Dkt. Nos. 95, 104, 106, 107, 144, 146 |
| TYLER BENDIS, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>WILLIAM RICK SINGER, et al.,<br><br>Defendants. | Case No. 5:19-cv-01405-EJD<br><br>Re: Dkt. Nos. 84, 91, 92, 125, 127<br><br>**ORDER DISMISSING WITHOUT LEAVE TO AMEND *BENDIS* AND *TAMBOURA* PLAINTIFFS' AMENDED COMPLAINTS FOR LACK OF STANDING** |

This lawsuit stems from the revelation that William "Rick" Singer conspired with the parents of college applicants to bribe various universities' head athletic coaches and administrators. The "College Admissions Scandal" has resulted in a number of criminal and civil actions. Presently before the Court, are two related civil actions—*Tamboura v. Singer* and *Bendis v. Singer*. Defendants in each case have filed various motions to dismiss. Plaintiffs contest these motions and argue their Complaints plead sufficient facts to state a claim upon which relief can be granted. This may be true. The Court, however, declines to directly rule on these motions to dismiss. After reading the Parties' briefs and after listening to the Parties' arguments at the

hearing on May 28, 2020, the Court holds that Plaintiffs' lack standing to pursue their claims. The Court thus lacks jurisdiction and must **DISMISS** Plaintiffs' claims.

I.   BACKGROUND

A. Factual Background

The facts of *Tamboura* and *Bendis* are nearly identical. Each case arises out of the "fraudulent university-admission scheme" discussed above. *See* Amended Class Action Complaint ("Bendis FAC") ¶ 1, Dkt. 34; Class Action Amended Complaint ("Tamboura FAC") ¶ 1, Dkt. 69. This scheme worked as follows: parents would pay William "Rick" Singer to manipulate and cheat the admissions process at top universities. Bendis FAC ¶ 1; Tamboura FAC ¶ 1. Specifically, parents would either pay Singer, his business, or his charity "huge sums of money" and, in exchange, Singer would create false sports profiles for the parent's teenage student, making it seem as though the teenager was a superior athlete. Bendis FAC ¶ 2; Tamboura FAC ¶ 2. Under college admissions practices, university admissions programs set aside a number of "slots" for admission of students who excelled in certain sports. *Id.* Singer would offer "significant, hefty bribes" to employees of the universities (typically coaches or managers in the school's athletic department). *Id.* The bribed coach would bypass other qualified student-athlete candidates and insert Singer's candidates into the athletic "slots" even though Singer's applicants did not "qualify as persons excelling in sports." *Id.* Importantly, "[e]xcelling in sports was a known, objective criterion applied by the universities." *Id.*

Plaintiffs contend that as a result of this fraud, unqualified students were accepted into highly selective universities while students who "played by the rules" were denied admission. Bendis FAC ¶ 3; Tamboura FAC ¶ 3. Plaintiffs further allege that the universities were negligent because they failed to maintain adequate protocols and security measures to ensure the "sanctity" of the college admissions process. Bendis FAC ¶ 4; Tamboura FAC ¶ 4. Because of the fraudulent and negligent conduct, Plaintiffs were damaged since they paid college admissions application fees without knowing that unqualified candidates were "slipping in through the back

door of the admissions process." Bendis FAC ¶ 5; Tamboura FAC ¶ 5. In other words, Plaintiffs contend that they suffered both an economic harm, because they paid application fees, *and* an ideological harm, because they did not receive the "fair" and "objective" admissions process that they were promised. Bendis FAC ¶ 6; Tamboura FAC ¶ 6; *see also* Tamboura FAC ¶ 457(b) ("Plaintiffs did not receive fair consideration and a fair merit-based application process because other applicants were admitted based on different criteria, *i.e.*, whether they were willing to pay bribes.").

The "Bendis Plaintiffs" include Tyler Bendis, Julia Bendis, Nicholas James Johnson, and James Johnson. *See* Bendis FAC ¶¶ 7–10. The Bendis Plaintiffs assert their claims against William "Rick" Singer, The Edge College & Career Network, LLC (Singer's business), The Key Worldwide Foundation (Singer's charity), University of Southern California, Stanford University, University of San Diego, the University of Texas at Austin, Wake Forest University, Yale University, Georgetown University, and the Regents of the University of California.[1] *Id.* ¶¶ 7–21. The "Tamboura Plaintiffs" include Alyssa Tamboura, Marine Hall-Poirier, Keith Hall, Laurence Poirier, Yasamin Ghodsbin, Mika Tjoa, Candace Tjoa, Timmy Mai, Chrissy Pham, Esteban Frausto, Karl Armbrust, Dirk Armbrust, Leilani Durden, LaNae Durden, Jillian Garcia, Victor Garcia, Laila Keyhan, Kasra Keyhan, Caleb Crane, Falen Robinson, Cole Smith Ronda Smith, Kathleen Tatusko, Amy Tatusko, Angelique Vollmer, and Michael Vollmer. Tamboura FAC ¶¶ 7–32. The Tamboura Plaintiffs assert their claims against William "Rick" Singer, The Edge College & Career Network, LLC (Singer's business), The Key Worldwide Foundation (Singer's charity), University of Southern California, Stanford University, the University of Texas at Austin, Wake Forest University, Yale University, Georgetown University, and the Regents of the University of California.[2] *Id.* ¶¶ 33–42.

---

[1] The Court refers to the university/college defendants as "University Defendants."
[2] A number of Plaintiffs and University Defendants have since been terminated.

### B. Procedural History

On June 13, 2019, the Bendis Plaintiffs filed their first amended complaint. *See* Bendis FAC. Likewise, on August 16, 2019, the Tamboura Plaintiffs filed their first amended complaint. *See* Tamboura FAC. Thereafter, Defendants in each action filed a number of motions to dismiss. After reviewing these papers, the Court ordered the Parties to submit supplemental briefing to address the issue of standing. *See* Order Re Supplemental Briefing, Dkt. 127 (Bendis Docket). On February 25, 2020, "University Defendants" submitted a supplemental brief regarding standing. University Defendants' Supplemental Brief in Support of Their Motion to Dismiss ("Supp. Brief"), Dkt. 151 (Tamboura Docket). Thereafter, the Bendis and Tamboura Plaintiffs filed identical supplemental briefs. *See* Plaintiffs' Opposition to the University Defendants' Supplemental Brief in Support of Their Motion to Dismiss ("Supp. Brief Opp."), Dkt. 153 (Tamboura Docket).[3]

## II. LEGAL STANDARD

Federal courts are courts of limited jurisdiction; they are authorized only to exercise jurisdiction pursuant to Article III of the U.S. Constitution and federal laws enacted thereunder. *Gregory Vill. Partners, L.P. v. Chevron U.S.A., Inc.*, 805 F. Supp. 2d 888, 896 (N.D. Cal. 2011); *see also Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428, 434 (2011) ("[F]ederal courts have an independent obligation to ensure that they do not exceed the scope of their jurisdiction, and therefore they must raise and decide jurisdictional questions that the parties either overlook or elect not to press."). Hence, an Article III federal court must ask whether a plaintiff has suffered sufficient injury to satisfy the "case or controversy" requirement of Article III of the U.S. Constitution. *In re LinkedIn User Privacy Litig.*, 932 F. Supp. 2d 1089, 1092 (N.D. Cal. 2013).

To satisfy Article III standing, a plaintiff must allege: (1) an injury in fact that is concrete and particularized, as well as actual or imminent; (2) that the injury is fairly traceable to the

---

[3] For ease, the Court omits reference to the identical supplemental brief filed on the Bendis docket and only refers to the Tamboura brief.
Case Nos.: 5:19-cv-03411-EJD & 5:19-cv-01405-EJD
ORDER DISMISSING WITHOUT LEAVE TO AMEND *BENDIS* AND *TAMBOURA* PLAINTIFFS' AMENDED COMPLAINTS FOR LACK OF STANDING
4

challenged action of the defendant; and (3) that it is likely (not merely speculative) that injury will be redressed by a favorable decision. *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561–62 (1992). To establish an injury in fact, a plaintiff must show that he or she suffered "an invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016) (quotation marks and citation omitted). To establish a traceable injury, there must be "a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court." *Lujan*, 504 U.S. at 560 (quotation marks and citation omitted) (alteration omitted). Finally, it must be "likely" as opposed to merely "speculative" that the injury will be "redressed by a favorable decision." *Id.* at 561 (quotation marks and citation omitted). If a plaintiff is seeking injunctive or declaratory relief, the plaintiff must demonstrate "a sufficient likelihood that [they] will again be wronged in a similar way." *City of L.A. v. Lyons*, 461 U.S. 95, 111 (1983).

If a plaintiff cannot allege Article III standing, then the federal court lacks jurisdiction over the case and must dismiss the action pursuant to Federal Rule of Civil Procedure 12(b)(1). *Spencer Enters., Inc. v. United States*, 345 F.3d 683, 687 (9th Cir. 2003); *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101, 109–10 (1998). Indeed, "[a]t the pleading stage, the plaintiff must clearly allege facts demonstrating each element." *In re Apple Processor Litig.*, 366 F. Supp. 3d 1103, 1107 (N.D. Cal. 2019) (quoting *Spokeo*, 136 S. Ct. at 1547. "When '[s]peculative inferences' are necessary . . . to establish either injury or the connection between the alleged injury and the act challenged, standing will not be found." *Johnson v. Weinberger*, 851 F.2d 233, 235 (9th Cir.) (quoting *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 45 (1976)).

### III. DISCUSSION

Plaintiffs argue that they have established both an economic and ideological injury in fact. *See* Supp. Brief Opp. at 4. Their argument can be compared to a "bargain-for-exchange" scenario: Plaintiffs maintain that when they applied to the Defendant Universities, they only applied (and paid the application fee) because Defendants represented that the application process was fair and objective. Yet, they argue, because of the College Admissions Scandal, the process was neither fair nor objective. In Plaintiffs' view, they suffered the economic harm of not receiving what they agreed to pay for *and* the ideological harm of (1) applying to a school corrupted by fraud and (2) being treated unfairly. Defendants, however, point out a crucial flaw in Plaintiffs' reasoning— even accepting that Singer's scheme was unfair, Plaintiffs cannot show that they were particularly affected by the scheme. As detailed above, Singer's scheme focused on athletic admissions spots. Singer would bribe coaches or managers in a school's athletic department in order to get his applicants student-athlete admissions slots. But, no Plaintiff alleges that they applied for, were being considered for, or were denied an athletic spot. Hence, even if the college admissions scheme occurred as Plaintiffs' claim, no Plaintiff was *particularly* affected by the scheme. The Court thus agrees with Defendants—Plaintiffs have failed to plead an injury in fact and thus have not established standing. *See McNamara v. City of Chi.*, 138 F.3d 1219, 1221 (7th Cir. 1998) ("A plaintiff who would have been *no better off* had the defendant refrained from the unlawful acts of which the plaintiff is complaining does not have standing under Article III of the Constitution to challenge those acts in a suit in federal court." (emphasis added)).

In *Allen v. Wright*, the Supreme Court analyzed what harm constitutes an injury in fact. There, the parents of black public school children alleged in a nationwide class action that the Internal Revenue Service ("IRS") failed to adopt sufficient standards and procedures to fulfill its obligation to deny tax-exempt status to racially discriminatory private schools. The parents maintained that they were harmed by this failure. 468 U.S. 737, 739–40 (1984), *abrogated on other grounds by Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014).

The Supreme Court determined that this was not a judicially cognizable injury because the mere desire (without more) to have the government act in accordance with the law is not sufficient to confer jurisdiction on a federal court. *Id.* at 754. This is to say, in order for a plaintiff to have standing, they must have suffered in a way that is unique to them. *See, e.g.*, *Lujan*, 504 U.S. at 560 n.1 ("By particularized, we mean that the injury must affect the plaintiff in a personal and individual way.").

*Allen* stands for the clear standing principle that an injury in fact cannot just be based on some morally irreprehensible act. Some link between the bad act and the plaintiff is needed. Despite this foundational principle, at oral argument and in their papers, Plaintiffs argue that they have plead an injury in fact because they have alleged that they would not have applied to the universities had they known about the ongoing fraud. This is no different than the type of generalized grievance that courts have routinely rejected. *See e.g.*, *Birdsong v. Apple, Inc.*, 590 F.3d 955, 960–61 (9th Cir. 2009) ("At most, the plaintiffs plead a potential risk of hearing loss not to themselves, but to other unidentified iPod users who might *choose* to use their iPods in an unsafe manner. The risk of injury the plaintiffs allege is not concrete and particularized *as to themselves*."); *see also Lujan*, 504 U.S. at 563–67 (holding that the plaintiffs fear of harm to endangered species, without some showing of particular injury, was insufficient). Plaintiffs alleged injury—that they applied to a school engaging in fraud and that they would not have applied had they known about the fraud—is not particular to them. *Any* applicant, including university admitees, have this harm. Moreover, this harm seems to be focused on the "wrongness" of the scheme itself. The simple fact that Singer bribed and manipulated the college admissions process is insufficient to invoke standing on these Plaintiffs. Some link between Singer's scheme and Plaintiffs is needed, otherwise Plaintiffs' harm collapses into a harm based on the wrongness of the scheme itself. Indeed, without a link, Plaintiffs cannot show that their harm is particular.

Next, Plaintiffs argue that the scheme made their admissions review unfair. Plaintiffs, however, have not plead facts to support this theory. *In re Apple Processor Litigation* is

instructive. There, the plaintiffs owned Apple devices. 366 F. Supp. 3d at 1105. Independent security researchers discovered an industry-wide computer security vulnerability known as Spectre and Meltdown that directly affected Apple's processors within devices like iPhones, iPads, iPods, and the Apple TV. *Id.* In response, Apple released a software update to address the problems. *Id.* at 1105–06. The plaintiffs argued that such mitigation strategies severely degraded processor performance and rendered iDevices substantially slower, despite Apple's claims to the contrary. *Id.* at 1106. The plaintiffs brought a class action on behalf of all persons who had purchased or leased an iDevice. *Id.* The court dismissed the plaintiffs' action because no named plaintiff alleged that they downloaded the updates or that the updates caused any degradation in the performance of their iDevice. *Id.* at 1107, 1109–10. Likewise, the plaintiffs failed to allege facts to support such an inference. *Id.* Hence, because the plaintiffs could not show that they were actually affected by the alleged wrongful conduct, they lacked standing to pursue their claims.

Like the plaintiffs in *In re Apple Processor Litigation* (and in *Allen*), no named Plaintiff can show that the allegedly fraudulent scheme particularly affected them. As alleged, Plaintiffs concede that the admission spots involved in the bribery scheme were slots reserved for college athletes. No Plaintiff asserts that they are a college athlete or that they would have been considered for the special "college athletic slots." *See* Bendis FAC ¶ 2; Tamboura FAC ¶ 2; *see also Perez v. Nidek Co., Ltd.*, 711 F.3d 1109, 1113 (9th Cir. 2013) (holding that Article III standing requirements prevented the plaintiffs from suing physicians who did not perform eye surgery on them, even though the physicians may have performed surgery on other putative class members); *McNamara*, 138 F.3d at 1221. This is damning. Plaintiffs' entire theory of harm is built around the scheme affecting their admissions review. But, because the admissions spots that the scheme actually affected were separate from the general admissions process that Plaintiffs underwent, the scheme did not affect Plaintiffs. Plaintiffs thus have not shown that the scheme actually or particularly affected them. Hence, Plaintiffs alleged harm is comparable to the type of generalized harm rejected in *Allen* and *In re Apple Processor Litigation*.

Plaintiffs attempt to draw arbitrary lines in an attempt to save their complaints. In their view, the harm is not how Defendants reviewed their applications. *See* Supp. Brief Opp. at 4. Rather, the harm is that Defendants "tricked" them into paying an admissions application fee by promising that applicants would receive a fair and holistic review. *Id.*; *see also supra*. In the alternative, they argue that the fact that Singer targeted student-athlete spots is irrelevant because the Singer applicants were not actually student-athletes.[4] There are two problems with this view. First, as the Court analyzed above, the argument that Plaintiffs would not have applied if they knew about the fraud is too generalized. *See supra*. Second, it is relevant that Singer targeted student-athlete spots. The fact that Singer's applicants were not actually student athletes is a non-issue. Singer's applicants took athletic spots. General admissions spots were unaffected. By way of example, say an athletic coach has 10 admissions spots. The general admissions process has 450 spots. Singer's scheme manipulated the 10 spots; these spots are separate from the 450 spots available for general admissions. By their own pleadings, Plaintiffs admit that they were competing for the general admissions slots. Hence, Singer's manipulation of the 10 admissions spots had no effect on the review of Plaintiffs' applications. Moreover, Plaintiffs provide no facts to support a theory that the "general" admissions review process was unfair for some other reason.[5] *Cf.* Plaintiffs' Opposition to Defendants' Motion to Dismiss, Dkt. 125 ("Thus, Plaintiffs do not dispute that Defendants considered high school grades, they allege instead that Defendants' statements about merit-based criteria—although literally true—*created the false impression that bribery would not be a consideration for admission, which it was*." (emphasis added)).

To summarize, Plaintiffs' Complaints indicate that Singer used the "coaches or managers in the school's athletic department" to perpetuate his scheme. The general admissions process

---

[4] At oral argument, Plaintiffs argued that the Universities had knowledge of the scheme because the coaches involved in the scheme were the Universities' agents. This goes towards the sufficiency of Plaintiffs' claims. Regardless of whether the Universities had imputed knowledge, the issue remains, were Plaintiffs particularly affected by the scheme?

[5] Plaintiffs reliance on *Omidi v. Wal-Mart Stores, Inc.*, 742 F. App'x 260 (9th Cir. 2018) is unavailing. Nothing in that case eradicates the requirement that the injury in fact be "particularized."

Case Nos.: 5:19-cv-03411-EJD & 5:19-cv-01405-EJD
ORDER DISMISSING WITHOUT LEAVE TO AMEND *BENDIS* AND *TAMBOURA* PLAINTIFFS' AMENDED COMPLAINTS FOR LACK OF STANDING
9

thus was not influenced by the fraud. Only the athletic "slots" were affected. But, Plaintiffs were not being considered for those slots. Hence, because the admissions process never contemplated that Plaintiffs would receive *or even be considered for* the athletic slots, there is no support for Plaintiffs' claims that the bribery infiltrated the general admissions process. Plaintiffs thus have not established that they suffered from an injury-in-fact. Accordingly, because Plaintiffs cannot show a judicially cognizable harm, they lack standing and the Court **GRANTS** Defendants' motions to dismiss on jurisdictional grounds.[6]

## IV.   LEAVE TO AMEND

In determining whether leave to amend is appropriate, the district court considers "the presence of any of four factors: bad faith, undue delay, prejudice to the opposing party, and/or futility." *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 712 (9th Cir. 2001) (noting amendments should be granted with "extreme liberality"); Fed. R. Civ. Pro. 15(a) (2) (court should freely allow amendment when "justice so requires"). If leave to amend would be futile, the court may deny leave. *See Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 296 (9th Cir. 1990) ("It is not an abuse of discretion to deny leave to amend when any proposed amendment would be futile.").

Here, the Court finds that leave to amend would be futile. When questioned about amendment at the oral argument, Plaintiffs' counsel responded that they would amend to plead more facts supporting their theory that Plaintiffs would not have paid if they knew about the bribery scheme. This would not cure the lack of standing. Plaintiffs would have to show some connection between the scheme and their admissions review. For the reasons discussed above, the Court does not believe that Plaintiffs will be able to plead facts connecting the scheme to their admissions process. Moreover, Plaintiffs cannot amend their complaints to add plaintiffs who

---

[6] Because Plaintiffs alleged harm against Defendant Singer (and his charity/business) are based on Singer's fraudulent scheme, the same analysis recited above applies. Plaintiffs must show some particular harm caused by the Singer Defendants in order to show an injury in fact. The mere fact that the alleged scheme occurred, without more, is insufficient. *See Lujan*, 504 U.S. at 560 n.1.

Case Nos.: 5:19-cv-03411-EJD & 5:19-cv-01405-EJD
ORDER DISMISSING WITHOUT LEAVE TO AMEND *BENDIS* AND *TAMBOURA* PLAINTIFFS' AMENDED COMPLAINTS FOR LACK OF STANDING
10

would have standing. *See, e.g.*, *Wash. Tennis & Educ. Found., Inc. v. Clark Nexsen, Inc.*, 270 F. Supp. 3d 158, 166 (D.D.C. 2017) ("[W]hen subject matter jurisdiction is wanting because the plaintiff presently named in the complaint lacks standing, a court cannot grant leave to amend under Rule 15 to add a plaintiff for purposes of curing the jurisdictional defect."); *see also Pressroom Unions-Printers League Income Sec. Fund v. Cont'l Assurance Co.*, 700 F.2d 889, 983 (2d Cir. 1983) ("The longstanding and clear rule is that if jurisdiction is lacking at the commencement of [a] suit, it cannot be aided by the intervention of a [plaintiff] with a sufficient claim."). Accordingly, the Court determines that amendment would be futile.

## V.   CONCLUSION

This Order should not be construed as condoning Singer's manipulation of the college admissions process. Nonetheless, because Plaintiffs have not shown that they were particularly affected by Singer's scheme, the Court **GRANTS** Defendants' motions to dismiss on jurisdictional grounds without leave to amend.

**IT IS SO ORDERED.**

Dated: May 29, 2020

EDWARD J. DAVILA
United States District Judge

Case Nos.: 5:19-cv-03411-EJD & 5:19-cv-01405-EJD
ORDER DISMISSING WITHOUT LEAVE TO AMEND *BENDIS* AND *TAMBOURA* PLAINTIFFS' AMENDED COMPLAINTS FOR LACK OF STANDING
11